UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Abdel Elnashar,

        Plaintiff,

v.                                                                Civ. No. 02-4133 (JNE/JSM)
                                                                  ORDER

Speedway SuperAmerica, LLC,

        Defendant.

---

Jon Erik Kingstad, Esq., Kingstad Law Office, appeared for Plaintiff Abdel Elnashar.

Stephanie D. Sarantopoulos, Esq., Littler Mendelson, P.C., appeared for Defendant Speedway SuperAmerica, LLC.

---

Abdel Elnashar brought this case against his former employer, Speedway SuperAmerica LLC (SuperAmerica). He alleges that SuperAmerica discriminated against him on the basis of his race, in violation of 42 U.S.C. §§ 1981, 1981a, 2000e to 2000e-17 (2000).[1] He also alleges that SuperAmerica failed to provide him a written and signed agreement for hire, in violation of Minn. Stat. § 181.55 (2004), and that SuperAmerica induced him to transfer his place of employment by means of false representations or pretenses, in violation of Minn. Stat. § 181.64-.65 (2004). The case is before the Court on SuperAmerica's motion for summary judgment. For the reasons set forth below, the Court grants the motion.

## I.  BACKGROUND

SuperAmerica operates retail gasoline convenience stores throughout the Midwest. Elnashar, an Arab-American raised in Egypt, began working for SuperAmerica as a Manager

---

[1]    Elnashar's Amended Complaint also alleges that SuperAmerica discriminated against him because of his national origin and religion. At the motion hearing, Elnashar indicated that he was abandoning these claims. Accordingly, the Court dismisses them with prejudice.

Trainee in June or July 2001.  As a Manager Trainee, Elnashar worked with other managers to learn the skills required to oversee and help perform all of the day-to-day operations of a store.

Elnashar commenced his training at a SuperAmerica store in Bloomington, Minnesota. He worked at that store for approximately three months under the supervision of Store Manager Jason Dang, who completed the required Management Training Guide with Elnashar.  The Guide detailed the tasks Elnashar was required to master before being promoted to the Store Manager position.

In September 2001, Elnashar requested a transfer to a different store because he did not feel he was being adequately trained at the Bloomington store.  District Manager Mark Erickson complied with Elnashar's request and transferred him to a SuperAmerica store on Rice Street in St. Paul.  While at the Rice Street store, Elnashar worked under Merry Bolle.  Bolle, like Elnashar, was a relatively new Manager Trainee.

At the end of October 2001, Elnashar requested a second transfer because he still did not feel that he was receiving the training he required.  Erickson again granted Elnashar's request and transferred him to SuperAmerica's Seventh Street store in St. Paul.  There, Elnashar was instructed to report to and take direction from Store Manager Anne Stehr—whom Elnashar had previously praised as a good teacher—and Associate Manager Jean Schneider.  In January 2002, when Elnashar exhausted his 224 allotted training hours, SuperAmerica reclassified him in its payroll system as an Assistant Manager Trainee.[2]  Shortly thereafter, Elnashar's hours were cut from full-time to sixteen hours per week.

---

[2]    At the time Elnashar worked as a Manager Trainee, SuperAmerica allotted 224 hours for Manager Trainees to complete their training.  During that 224-hour period, the Trainee's compensation was funded at the Company's regional level.  At the end of that period, the regional funding ceased and the Trainee's compensation was funded by the individual store where the Trainee worked.

Elnashar's time at the Seventh Street store was not tranquil. He and Schneider, with whom he was occasionally required to work, did not get along. According to Elnashar, Schneider was mean to him, asked him inappropriate questions about his background, and inappropriately pressed her chest against him while she was training him in close spaces. According to Schneider, Elnashar was insubordinate, unwilling to perform required tasks, and was rude to other employees.

Near the end of February 2002, SuperAmerica began investigating Elnashar in response to a complaint that he had harassed an African-American Customer Service Associate (CSA). During the course of the investigation, Erickson spoke to management about Elnashar's behavior at work. At the conclusion of that investigation, on March 1, 2002, Erickson issued a written reprimand to Elnashar. Specifically, Erickson reprimanded Elnashar for creating a hostile working environment, refusing to perform shift duties when asked, behaving discourteously toward his co-workers, and leaving his shift three times after losing his temper. At a meeting on the same day, Erickson asked Elnashar to sign the warning. Elnashar refused, abruptly left the store, and never returned.

Approximately one month after Elnashar ceased employment at SuperAmerica, two FBI agents contacted Elnashar at his home after receiving a tip about Elnashar.[3] The agents' interview of Elnashar and search of his home yielded no evidence against him. As a result, the agents informed Elnashar that the case concerning him would be closed. One of the agents,

---

[3]     There is no dispute that after receiving the tip but prior to visiting Elnashar, the FBI agents presented themselves at the Seventh Street store in an attempt to confirm Elnashar's home address. Stehr and Schneider provided the FBI agents the information they requested. In compliance with SuperAmerica's policy of cooperation with law enforcement and in response to the agents' questions, Stehr and Schneider also provided information they had learned about Elnashar's background during the time Elnashar worked at the store.

Myron Umbel, allegedly revealed to Elnashar that an employee at SuperAmerica was the informant and had accused Elnashar of making bombs.

On June 12, 2002, Elnashar filed an administrative charge with the City of Saint Paul Department of Human Rights (SPDHR), alleging that SuperAmerica discriminated against him on the basis of his race and sex. After receiving notice that the SPDHR found no probable cause for his claims, Elnashar filed this action on October 22, 2002.

## II.    DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A.    **Race Discrimination**

Elnashar alleges that SuperAmerica discriminated against him because of his race, in violation of 42 U.S.C. §§ 1981, 1981a, 2000e to 2000e-17.[4]  The parties agree that Elnashar's race discrimination claims should be analyzed under the *McDonnell Douglas* framework.  *See Johnson v. AT&T Corp.*, No. 04-2305, 2005 WL 2138808, at *3 (8th Cir. Sept. 7, 2005).  Under *McDonnell Douglas*, Elnashar has the initial burden of establishing a prima facie case of discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Generally, to establish a prima facie case of discrimination, Elnashar must demonstrate that:  (1) he belongs to a protected group; (2) he was qualified for the position in question; (3) he was subjected to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.  *See Tatum v. City of Berkeley*, 408 F.3d 543, 551 (8th Cir. 2005).  "The prima facie case raises a legal presumption of discrimination in the plaintiff's favor, requiring the defendant to articulate a legitimate, nondiscriminatory reason for its action."  *Peterson v. Scott County*, 406 F.3d 515, 521 (8th Cir. 2005).  If the defendant satisfies its burden, the plaintiff must then demonstrate that the nondiscriminatory reason offered by the defendant was a pretext for discrimination.  *Id.*  "The ultimate burden of proving discrimination remains with the plaintiff at all times."  *Id.*

Elnashar alleges multiple theories of discrimination.   Specifically, he claims that SuperAmerica discriminated against him on the basis of his race by failing to promote him to a

---

[4]    SuperAmerica argues that the Amended Complaint does not allege race discrimination and that it is therefore entitled to summary judgment on these claims.  Although the Amended Complaint does not use the word "race," SuperAmerica had notice that Elnashar was pursuing claims of racial discrimination.  His administrative charge alleges racial discrimination; his Amended Complaint makes repeated references to his Arab descent.  Under these circumstances and in light of the liberal pleading standards, *see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), the Court will consider Elnashar's claims of racial discrimination on their merits.

Store Manager position; effectively demoting him by transferring him to the Seventh Street store, changing his job title from Manager Trainee to Assistant Manager Trainee, and reducing his hours; reprimanding him; and constructively discharging him.  The Court examines each in turn.

1.    *Failure to promote*

Elnashar first asserts that SuperAmerica discriminated against him on the basis of his race by failing to promote him to the position of Store Manager of the Rice Street store.[5]  He alleges that a similarly situated white Manager Trainee, Merry Bolle, was promoted in his stead.

a.    Prima facie case

SuperAmerica does not dispute that Elnashar is a member of a protected class or that the failure to promote an employee to a position for which he is qualified can be an adverse employment action.  SuperAmerica argues, however, that Elnashar has failed to satisfy his burden of demonstrating his prima facie case because he has not demonstrated that he was qualified for the position of Store Manager.  The Court agrees.  Elnashar testified that, at the time the Rice Street Store Manager position became available, he had requested a transfer from the Bloomington store precisely because he did not feel he had received adequate training as a Store Manager at that location.  Although Elnashar's affidavit in opposition to SuperAmerica's motion suggests otherwise, a plaintiff cannot defeat summary judgment by filing an affidavit contradicting deposition testimony.  *Marathon Ashland Petroleum, LLC. v. Int'l Bhd. of*

---

[5]    Elnashar concedes that he did not allege failure to promote in his administrative charge. "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994) (quoting *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985)).  Accordingly, this claim is dismissed with prejudice insofar as it is based on Title VII.  *See id.*

*Teamsters*, 300 F.3d 945, 951 (8th Cir. 2002).  Elnashar has failed to establish his prima facie case.

      b.     Pretext

Even if Elnashar had established his prima facie case of discriminatory failure to promote, SuperAmerica has offered a legitimate, nondiscriminatory reason for promoting Bolle rather than Elnashar.  Specifically, SuperAmerica maintains that it promoted Bolle instead of Elnashar because Bolle was more qualified for the position.  Bolle had worked at SuperAmerica since May 1995—six years longer than Elnashar—and had previous experience working at the Rice Street store, whereas Elnashar did not.  SuperAmerica also contends that it did not promote Elnashar because the District Manager in charge of making the promotion decision, Mark Erickson, had fielded complaints that Elnashar refused to take direction from others.

Because SuperAmerica has articulated legitimate, nondiscriminatory reasons for its action, the burden shifts back to Elnashar to demonstrate that SuperAmerica's stated reason is pretextual and that the real reason for the adverse employment action was unlawful race discrimination.  *See Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1157 (8th Cir. 1999). Elnashar attempts to satisfy this burden by demonstrating that:  (1) he was treated differently than Bolle, a similarly situated white employee; (2) SuperAmerica's accusations that he did not take direction from others were false; (3) his co-workers have made discriminatory and false comments about his background; and (4) a SuperAmerica employee instigated an FBI investigation of him.

      i.     Disparate treatment

Elnashar attempts to prove disparate treatment by demonstrating that an allegedly similarly situated white employee, Merry Bolle, was promoted instead of him.  In support of his

claim that he and Bolle were similarly situated, he offers the affidavit of Bolle and Donald Smith, a former Store Manager who trained Bolle. Both aver that Elnashar was equally as qualified as Bolle for the Rice Street Store Manager position.

"At the pretext stage of the *McDonnell Douglas* burden-shifting framework, the test for determining whether employees are similarly situated to a plaintiff is a rigorous one." *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 853 (8th Cir. 2005). Elnashar must show that he and Bolle "were similarly situated in all relevant respects." *Id.* Elnashar has failed to make this showing. Bolle's and Smith's averments notwithstanding, the record reveals that Bolle had significantly more experience working for SuperAmerica. In addition, she had prior experience working at the Rice Street store, whereas Elnashar did not. Under these circumstances, no reasonable factfinder could conclude that Bolle and Elnashar were similarly situated.

ii.     Veracity of proffered reason

Elnashar also attempts to prove that SuperAmerica's allegations that he refused to obey orders is false and, therefore, pretextual. In support of his position, Elnashar has offered evidence that the women who allegedly accused him of insubordination did not have any complaints about Elnashar's behavior at work.

While it may be true that Elnashar was not, in fact, insubordinate, there is ample evidence that Erickson—the decision-maker—honestly believed that Elnashar was insubordinate and refused to perform tasks he deemed undesirable. Indeed, Jason Dang, Elnashar's first supervisor, testified at his deposition that he made reports to Erickson about Elnashar to that effect. Elnashar does not argue that Dang had any racial bias against him. Under these circumstances, Elnashar's evidence is insufficient to demonstrate pretext. *See Johnson*, 2005 WL 2138808, at *5-6.

8

iii.    Discriminatory comments

Third, Elnashar suggests that comments made by other employees months after he was denied the promotion are evidence that SuperAmerica's proffered justifications for not promoting him are pretext for discrimination.  Specifically, Elnashar argues that while he was employed at the Seventh Street store, Schneider asked him whether he had a harem and whether he "rode camels around everywhere in Egypt."  He also points to allegedly false statements Stehr and Schneider made about his background, including that Elnashar grew up by the Red Sea.  In fact, Elnashar did not grow up by the Red Sea.

Elnashar's evidence is insufficient to demonstrate pretext for at least two reasons.  First, he has not presented any evidence that Erickson, who made the promotion decision, made or endorsed such comments.  "The Court must 'distinguish comments which demonstrate a discriminatory animus in the decisional process from stray remarks in the workplace, statements by non-decisionmakers, or statements by decisionmakers unrelated to the decisional process." *McKay v. Mineta*, Civ. No. 00-2624, 2002 WL 236689, at *4 (D. Minn. Feb. 15, 2002) (quoting *Breeding*, 164 F.3d at 1157).  Elnashar's bald contentions that Erickson was part of a conspiracy with Stehr and Schneider to get rid of him do not establish a connection between these comments and Erickson's decision.  "Evidence, not contentions, avoids summary judgment." *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003).  Neither Stehr's nor Schneider's comments can be attributed to Erickson; they do not therefore give rise to an inference of discriminatory intent with respect to Erickson's decision not to promote Elnashar.

Second, with respect to Stehr's and Schneider's allegedly false statements about Elnashar's background, the showing of pretext necessary to survive summary judgment requires more than merely discrediting statements made by the employer. *Cf. Johnson*, 2005 WL

9

2138808, at *5. Elnashar must also show that the circumstances permit a reasonable inference that he was denied the promotion because of his race. *See id.* The fact that Stehr and Schneider made false statements about Elnashar's background do not, without more, permit such an inference.

iv.    FBI investigation

Finally, Elnashar attempts to prove pretext by establishing that someone from SuperAmerica allegedly reported him to the FBI as being suspicious. He argues that this demonstrates that SuperAmerica and its employees had a bias against Arabs.

The Court finds that Elnashar has not presented any competent evidence that a SuperAmerica employee did, in fact, provide a tip to the FBI. Elnashar relies exclusively on Myron Umbel's alleged revelation that the informant was a SuperAmerica employee. Recognizing that Umbel's statement is hearsay, Elnashar argues that the Court should admit it under Federal Rule of Evidence 804(b)(3) or 807.

The statement against interest exception established in Rule 804(b)(3) is properly invoked only if the declarant is "unavailable" within the meaning of Rule 804(a). Elnashar argues that Rule 804(a)(5) is applicable in this case. "[T]he availability inquiry under Rule 804(a)(5) turns on whether the proponent of the former testimony acted in good faith and made a reasonable effort to bring the declarant to court." *United States v. Johnson*, 108 F.3d 919, 922 (8th Cir. 1997). In this case, Elnashar made only a half-hearted attempt to obtain Umbel's testimony. He served one subpoena, which was returned undelivered because Umbel had allegedly been transferred elsewhere. Elnashar has offered no evidence that he attempted to locate Umbel after learning that Umbel had been transferred. Under these circumstances, the Court declines to find that Umbel is unavailable for purposes of the statement against interest

10

exception.  *Cf. United States v. Flenoid*, 949 F.2d 970, 972-73 (8th Cir. 1991) (witness unavailable where party seeking to admit evidence demonstrated that it directed the marshals to serve witness at last known address, made other attempts to reach witness at that address, and exhausted all other leads concerning witness' whereabouts).

In the alternative, Elnashar argues that Umbel's statement should be admitted under the residual exception of Rule 807, which provides in relevant part:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Fed. R. Evid. 807.

The Court is not persuaded that Rule 807 is properly invoked in this case.  Elnashar implies that Umbel's statement, if discovered by Umbel's superiors, might expose Umbel to liability and sanctions.  However, Elnashar offers no authority for his position or any analysis of the extent of that exposure.  Without this analysis, the Court cannot conclude that the statement exhibits circumstantial guarantees of trustworthiness.  Umbel's statement is not properly admitted under Rule 807.

Absent admission of Umbel's statement, Elnashar has no competent evidence that a SuperAmerica employee—much less a decisionmaker—reported him to the FBI.  His proffered evidence is therefore insufficient to demonstrate pretext.

In sum, SuperAmerica is entitled to summary judgment on Elnashar's failure-to-promote claim because Elnashar has failed to demonstrate that he was qualified for the Store Manager position at the time it became available.  In addition, he has failed to demonstrate that

SuperAmerica's legitimate, nondiscriminatory reasons for its decision were pretext for discrimination.

2.    *Demotion(s)*

Elnashar next argues that SuperAmerica discriminated against him on the basis of his race by demoting him. Specifically, Elnashar alleges that SuperAmerica effectively demoted him by transferring him to the Seventh Street store, changing his job title from Manager Trainee to Assistant Manager Trainee, and reducing his hours.

a.    Transfer

The parties dispute whether Elnashar can establish a prima facie case of discrimination with respect to Elnashar's transfer to the Seventh Street store. Specifically, the parties dispute whether SuperAmerica's decision to transfer Elnashar is properly considered an adverse employment action. "A transfer constitutes an adverse employment action when the transfer results in a significant change in working conditions or a diminution in the transferred employee's title, salary, or benefits." *Turner v. Gonzales*, No. 04-3426, 2005 WL 2077090, at *6 (8th Cir. Aug. 30, 2005) (quotations omitted).[6] The record reveals that Elnashar requested the transfer. He had enjoyed working with the Seventh Street Store Manager, Anne Stehr, in the past. He was given additional training and greater responsibilities at the Seventh Street store.[7]

---

[6]    Several months after his transfer, Elnashar was reclassified as an Assistant Manager Trainee. By all accounts, this reclassification was not tied directly to his transfer. On the contrary, the undisputed evidence in the record is that he retained the classification of Manager Trainee for two to three months after his transfer to the Seventh Street store. Thus, the transfer was not accompanied by a diminution in title; the Court analyzes these employment actions separately.

[7]    The record reveals that, while at the Seventh Street store, Elnashar received additional training in completing daily reports and learned how to operate the store's safes and lottery machines. There is no dispute that he did not receive training in operating the store's safes or lottery machines while at the Bloomington or Rice Street stores.

Moreover, his hourly rate upon transfer did not change.  Under these circumstances, Elnashar cannot demonstrate that the transfer was an adverse employment action.  Elnashar has therefore failed to meet his burden at the prima facie stage.  Accordingly, the Court grants SuperAmerica's motion for summary judgment on this claim.

        b.      Reclassification

Next, Elnashar argues that SuperAmerica's decision to reclassify him from Manager Trainee to Assistant Manager Trainee[8] was a demotion based on race.  SuperAmerica asserts that the reclassification did not result in any change in Elnashar's pay or responsibilities.  As a result, the reclassification was not an adverse employment action and Elnashar has failed to establish his prima facie case.

Multiple SuperAmerica managers testified that Elnashar's reclassification was effectively a demotion.  Accordingly, construing the facts in the light most favorable to Elnashar, the Court finds that Elnashar has satisfied his burden of demonstrating that the reclassification was an adverse employment action.

The Court turns to the question of whether SuperAmerica's proffered legitimate reasons for the reclassification were a pretext for discrimination.  SuperAmerica maintains that Elnashar was reclassified because his Manager Trainee hours had expired.  According to SuperAmerica, to continue paying Elnashar, it was required to assign him to an open position at the Seventh Street store, which happened to be an Assistant Manager position.  In addition, SuperAmerica asserts that Elnashar's demotion was warranted in light of the fact that decisionmakers had

---

[8]      The record is unclear as to whether Elnashar was reclassified as an Assistant Manager Trainee or an Assistant Manager.  Because the Court construes the facts in the light most favorable to Elnashar at this stage of the litigation, the Court assumes for purposes of this motion that Elnashar was reclassified as an Assistant Manager Trainee.

received complaints that Elnashar refused to perform the duties of his position, repeatedly lost his temper, and walked off the job on multiple occasions.

In support of his argument that SuperAmerica's proffered legitimate reasons are pretext for discrimination, Elnashar offers much of the same evidence he offered in connection with his failure to promote claim. Specifically, he argues that: (1) SuperAmerica's accusation that he had performance problems is false; (2) his co-workers made discriminatory comments to him; and (3) his co-workers instigated an FBI investigation of him. Elnashar's second and third arguments fail in this context for the same reasons they failed with respect to his failure to promote claim. That is, Elnashar has not demonstrated that the person who made the decision to reclassify him—namely, Erickson—made or endorsed the allegedly discriminatory comments. Moreover, Elnashar does not have competent evidence that his SuperAmerica co-workers, much less Erickson, reported him to the FBI.

In support of his position that SuperAmerica's accusations about his behavior at work are false, Elnashar offers his own affidavit, together with Bolle's affidavit and Barbara Bastyr's[9] deposition testimony. Both Bolle's affidavit and Bastyr's deposition testimony provide evidence that while Elnashar was at the Bloomington and Rice Street stores, he readily performed all required duties and took direction well. Elnashar similarly avers that he performed all of the tasks to which he was assigned. This evidence is insufficient to demonstrate pretext. Bolle's affidavit and Bastyr's deposition testimony, while perhaps probative of Elnashar's conduct at the Bloomington and Rice Street stores, do not discredit Schneider's deposition testimony that, while at the Seventh Street store, Elnashar exhibited behavior problems. Moreover, Elnashar's own affidavit provides evidence that he engaged in precisely the conduct of which SuperAmerica

---

[9]      Bastyr worked with Elnashar at the Bloomington store.

accuses him, namely, walking off the job.  Thus, Elnashar has failed to demonstrate that SuperAmerica's proffered reason for its decision to reclassify him is false.

c.    Reduction in hours

Finally, Elnashar alleges that SuperAmerica demoted him by reducing his hours from forty hours per week to sixteen hours per week.  SuperAmerica does not dispute that Elnashar has established his prima facie case with respect to this employment action, but argues that it had a legitimate purpose for doing so—namely, at the time Schneider reduced Elnashar's hours, the company was making store-wide reductions.  In support of his claim that this justification is a pretext for discrimination, Elnashar offers evidence that:  (1) SuperAmerica's justification is false; (2) SuperAmerica employees made a report to the FBI and cooperated with the subsequent investigation; and (3) Schneider asked him questions about his background.

Elnashar asserts that SuperAmerica's claim that it made store-wide reductions in hours must be false in light of Schneider's admission that she did not cut her own hours.  Elnashar has not, however, offered any evidence contradicting the overwhelming testimony that, at the time Elnashar's hours were reduced, Stehr and Schneider had received an order from Erickson to reduce the store's overall labor hours; Schneider and Stehr did so by cutting several employees' hours.  To the extent Elnashar implies that he and Schneider were similarly situated and ought to be treated the same, the record does not support his argument.  Elnashar's evidence in this regard is therefore insufficient to demonstrate pretext.  Moreover, for the reasons discussed above, Elnashar has no competent evidence that someone from SuperAmerica reported him to the FBI.  The fact that Schneider and Stehr answered the FBI agents' questions in compliance with company policy is insufficient to raise an inference of discriminatory intent.

Finally, the Court turns to Schneider's comments to Elnashar about his background—that is, her questions about whether Elnashar had a harem and rode camels in Egypt. Elnashar has not offered evidence that these comments were anything other than stray comments in the workplace. Standing alone, they are not sufficient to give rise to an inference of unlawful discrimination. *See Calder v. TCI Cablevision of Mo., Inc.*, 298 F.3d 723, 730 (8th Cir. 2002). Because Elnashar has failed to demonstrate that SuperAmerica's legitimate, nondiscriminatory reasons for reducing his hours are a pretext for discrimination, the Court dismisses his claims on this theory.

3.    *Reprimand*

Elnashar next argues that Erickson's March 1, 2002, written reprimand was an actionable adverse employment action. A reprimand is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment. *See Singletary v. Mo. Dep't of Corrections*, No. 04-3505, 2005 WL 2218039, at *3 n.5 (8th Cir. Sept. 14, 2005). Elnashar does not dispute that SuperAmerica did not use the evaluation to detrimentally alter the terms or conditions of his employment. He has, therefore, failed to establish a prima facie case of discrimination with respect to this employment action. The Court grants SuperAmerica's motion for summary judgment on this claim.

4.    *Constructive Discharge*

Elnashar argues that SuperAmerica constructively discharged him. "To show constructive discharge, a plaintiff must show more than just a Title VII violation by [his] employer." *Breeding*, 164 F.3d at 1159 (quotations omitted). The plaintiff must show that the employer deliberately created "intolerable working conditions with the intention of forcing the employee to quit." *Id.* (quotations omitted). "The intent element is satisfied by a demonstration

that quitting was a reasonably foreseeable consequence of the employer's discriminatory actions." *Id.* (quotations omitted).

Elnashar claims that SuperAmerica deliberately attempted to force him to quit by issuing the March 1, 2002, written reprimand without allowing him to address the allegations in the reprimand, and by subjecting him to hostile working conditions. While Elnashar's working atmosphere was stressful to him, "a feeling of being unfairly criticized or having to endure difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Id.* at 1160. Accordingly, the Court grants SuperAmerica's motion for summary judgment on Elnashar's constructive discharge claim.

**B.    Hostile Work Environment**

Next, Elnashar asserts that while employed at the Seventh Street store, he was forced to endure a hostile work environment based on his race and sex. To establish his hostile work environment claim, Elnashar must show that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) there was a causal nexus between the harassment and his membership in the protected group; and (4) the harassment affected a term, condition, or privilege of his employment. *Turner*, 2005 WL 2077090, at *4. "The harassment must be both subjectively offensive to the employee and objectively offensive such that a reasonable person would consider it to be hostile or abusive." *Id.* "Neither simple teasing and offhand comments nor sporadic use of abusive language . . . and occasional teasing amount to discriminatory changes in the terms and conditions of employment or actionable harassment." *Peterson*, 406 F.3d at 524 (quotations omitted).

In this case, Elnashar asserts that Jean Schneider subjected him to unwelcome racial harassment by asking him whether he had a harem and whether he "rode camels around

everywhere in Egypt." These are isolated incidents that do not reach the level of actionable harassment. *See id.*

Elnashar also asserts that Schneider subjected him to unwelcome harassment by brushing her breasts against him while training him. These incidents happened during training sessions where Elnashar and Schneider were required to be in close quarters; Elnashar has offered no evidence that these incidents were motivated by sex or race. In any event, Elnashar testified at his deposition that these incidents primarily occurred during a short period of time. They were not sufficiently severe or pervasive to affect the terms, conditions, or privileges of his employment.

The Court notes that even if the harassment of which Elnashar complains was sufficiently severe and pervasive to affect the terms, conditions, or privileges of his employment, SuperAmerica has made the requisite showing under *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998), to warrant dismissal of Elnashar's hostile environment claims. Under *Faragher*, an employer is entitled to an order dismissing hostile environment claims where the employer demonstrates that (1) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) "the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*

Elnashar argues that SuperAmerica is not entitled to invoke the *Faragher* affirmative defense because Elnashar was constructively discharged as a result of Schneider's conduct. *See Pa. State Police v. Suders*, 124 S.Ct. 2342, 2351 (2004). For the reasons stated above, Elnashar was not constructively discharged. In fact, the record demonstrates that Elnashar himself did not feel compelled to resign until months after much of the conduct of which he complains ceased.

18

*See id.* at 2354 (holding that a hostile-environment constructive discharge claim entails something more than that the victim's employment conditions were altered; such a claim requires a showing that the employee's "working conditions [were] so intolerable that a reasonable person would have felt compelled to resign"). Thus, SuperAmerica is entitled to invoke the *Faragher* affirmative defense, provided the elements of the defense are satisfied.

There is no dispute that Elnashar did not report the harassment of which he now complains. Elnashar argues, however, that the first element is not satisfied because SuperAmerica did not have a readily accessible and effective policy for resolving complaints of harassment. Specifically, Elnashar alleges that, according to Erickson's deposition testimony, Elnashar could not have made allegations of harassment against Schneider because she was an Associate Manager. The deposition testimony to which Elnashar points does not support his contention. That testimony establishes that Elnashar, as a trainee, could not have completed a separation/discipline notice against a superior. There is nothing in that testimony suggesting that Elnashar could not have made a complaint of harassment about his superiors. On the contrary, the sexual harassment policy Elnashar received and signed when he was hired specifically advised him to report any unwelcome harassment, whether it be from customers or co-workers. The Court grants SuperAmerica's motion for summary judgment on Elnashar's hostile environment claims.

## C.    Minnesota Statutes § 181.55

In addition to alleging federal discrimination claims, Elnashar claims that SuperAmerica violated Minn. Stat. § 181.55. That statute requires employers to give their employees written and signed agreements of hire. SuperAmerica moves for summary judgment on this claim.

19

Elnashar maintains that because SuperAmerica has not produced proof that it complied with the statute, the Court should deny SuperAmerica's motion for summary judgment and should instead "draw[] an adverse inference against SSA." It is unclear precisely what kind of adverse inference Elnashar would have the Court draw, but, in any event, the only consequence of an employer's failure to comply with section 181.55 is that the burden of proof is shifted to the employer "to establish the terms of the verbal agreement in case of a dispute with the employee as to its terms." Minn. Stat. § 181.56; *see also Schempf v. Armour & Co.*, 5 F.R.D. 294, 297 (D. Minn. 1946). Given section 181.56 and *Schempf*, to the extent Elnashar intended to plead violation of section 181.55 as a cause of action, the Court grants SuperAmerica's motion for summary judgment.

**D.      Minnesota Statutes §§ 181.64-.65**

Finally, SuperAmerica maintains that it is entitled to summary judgment on Elnashar's claim under Minn. Stat. §§ 181.64-.65. Section 181.64 provides in relevant part:

> It shall be unlawful for any person, partnership, company, corporation, association, or organization of any kind, doing business in this state, directly or through any agent or attorney, to induce, influence, persuade, or engage any person to change from one place to another in this state, or to change from any place in any state, territory, or country to any place in this state, to work in any branch of labor through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, concerning the kind or character of such work, [or] the compensation therefor . . . .

Section 181.65 creates a private cause of action for violations of section 181.64.

Elnashar has not come forward with any facts permitting an inference that SuperAmerica made knowingly false representations to induce him to transfer locations. In fact, Elnashar testified that he requested both transfers; at the time of the transfer to the Seventh Street store, Erickson reasonably believed that transfer to the Seventh Street store would provide Elnashar

with the opportunities he desired.  Accordingly, the Court grants SuperAmerica's motion for summary judgment on Elnashar's Minn. Stat. §§ 181.64-.65 claim.

### III.     CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.    SuperAmerica's motion for summary judgment [Docket No. 97] is GRANTED.

2.    Elnashar's Amended Complaint [Docket No. 42] is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  September 22, 2005

s/  Joan N. Ericksen_____
JOAN N. ERICKSEN
United States District Judge